v. Wilkie, and the second case is 17-1762, Rose v. Wilkie. Unless you have some strong reason to oppose this, the panel has discussed it and thinks that we really should just combine these arguments, allowing 30 minutes on each side, because there is clearly an overlap between the issues and the parties in the setting. So we're going to proceed with the 30-minute calendar, 30 minutes, and combine the argument on the two cases. Correct? Good? All right. Mr. Chandler, whenever you're ready. Thank you, Your Honor. My name is John Chandler, and may it please the Court, the veterans we represent who were injured while serving our country have run into an insurmountable enemy. They have already experienced two and a half to seven years in the appeals from their denials of veteran benefits. That's time already spent in the process. This is the 30th anniversary of this Court's jurisdiction over the Veterans Court. Well, do you agree that if they've already achieved the relief that they sought? I understand that necessarily when we've got a mandamus petition that has to go through the system, there's been barely a delay. But as you know well, in the interim, it appears, at least from the submissions of the parties, that some of the appellants have received relief requested. And therefore, why aren't those new? Your Honor, we started with 17 petitioners. The Secretary gave full relief to four of them. Right, and they didn't appeal. And they did not appeal. Four of our veterans have died while we're in this appellate process. And of course, their cases are gone because they don't have spouses. None of the rest of the veterans have gotten what they asked for. The closest, Your Honor, is Ms. Cyphers. Ms. Cyphers, who had been in the appellate process for a number of years, asked for benefits going back to 2002. She got them going back, and I may be wrong on the date, to 2012. But isn't there a difference between whether she... I mean, this mandamus petition is based on the unreasonable delay of seeking relief, not the merit question of whether or not she got the relief she sought. Absolutely. We are not challenging... Has her claim adjudicated? Her claim is not adjudicated because the Secretary sent her back to the beginning of the line when she got those benefits. She has now filed a notice of disagreement with respect to those. And this 78-year-old woman is facing seven more years. They gave her one quarter of what she asked for. Seven more years to get the three quarters. I understand my point that that's sort of different than what you're alleging. I mean, they have now processed her claim. And now, yes, because she didn't achieve the relief she sought, she's got to try to re-adjudicate that. But that's a little different than what she was alleging in the first instance, right? I mean, I don't want to spend too much time on any particular person, but do you understand the point? Yes, Your Honor. Understood. And I hope I'm answering your question. She is in the appellate process. She has filed a notice of disagreement with what happened. How long has that been pending? That was filed in the last few weeks. Well, I actually thought she filed hers. My notes indicate that she filed her notice of disagreement in November 2017, but she has received a statement of the case, and now she's filed her form 9. So she's in the system, not on a disagreement, but on a certification to the BVA. That her claim has been processed that far. Your Honor, my hearing is not good. I'm very sorry. I was in the artillery. Forget it. That's way into the weeds. Why don't you proceed from your argument? Okay. Can I ask you for some specific information? Yes, Your Honor. So I am looking in particular at the supplemental material that we asked you to submit. Do you have that handy? I have it right here. Can you look at it at the same time? I sure do. Okay. So let's take Mr. Martin, for example. Yes, Your Honor. I'm looking at page 3 of that table. I've got it. All right. So he filed his notice of disagreement in December of 2013, and he got his statement of the case, which is a resolution of his notice of agreement, in December of 2015, correct? That's correct. Then he filed his form 9 appeal. No, form. Now, my understanding is this is just the form the veteran filed saying, I want to appeal, and on average it takes veterans 39 days to do that. They have up to 60 days in order to file such a notice of appeal, correct? That's correct, Your Honor. Okay. So the same month, as he gets his answer, he says, no, I want to appeal. Here's my appeal. Then it looks to me like his appeal was certified to the board within three months of when it was filed, and that seems quite anomalous because the statistics that you submitted suggest that the average time to certify is 537 days. Is that correct? That's correct, Your Honor. Okay. So you're not, for example, in Mr. Martin's case, you're not saying the VA failed to promptly certify because in his they certified it like this, right? Yes, Your Honor.  Let me keep going. Keep going. So then he files, then nothing happens. So the next step is this certified appeal, which as I understand it is nothing more than you take the document that's already been generated, the statement of the case, you take the document that has already been generated, the notice of appeal by the veteran, and you fill out a couple of pages, which takes about two hours to fill out at maximum, and that's all that's involved for certification. Is that correct? That is correct. Okay. So that occurred. Then it's my understanding that he filed a mandamus petition, September 26th of 2016, which is seven months after it was certified. But it looks to me like his appeal still has not even been docketed. Now, here in our court, docketing, it takes a matter of minutes. And so I don't know what docketing means for the board, and I'm hoping you're going to explain it to me, because here at our court, we get a notice of appeal, and that appeal is docketed on the very same day because all it really amounts to is entering it into the electronic system. Here is an appeal. Here is the docketing. And then in short order, some briefing schedule will come out thereafter. So what is it that docketing an appeal to the VBA is, and how does it differ once the appeal has been certified? What does the government have to do to docket it? Let me answer that discrete question and then jump back just a little bit. That two-page form is a Form A that the veteran doesn't even get. That goes with those already prepared things to... For me, this is possibly the most outrageous thing. It's something that should take two hours. It's documents that already exist in one two-page cover form that gets filled out, and it takes, on average, 537 days.  So he can't personally complain about that. But I do want to go back to my question. What does it mean to be docketed? Why has his appeal not been docketed? So what does the board have to do to, quote, docket it? It's certified to the board when the board gets around to it, and the board is the final decision of the secretary. It is part of the VA. It is the second step of the process. The Board of Veterans' Appeals has to say, okay, now we're ready to put it on our docket, which will then start a process of 321 days before we distribute it for decision to our judges. There is nothing in this record, nothing, that explains why it takes the secretary that long. On average. I think I must still not understand, because let's just take Mr. Martin's case. Mr. Martin's case was certified to the board in February of 2016. Yes, Your Honor. He filed a mandamus petition saying, wake up, people, nothing's happening with my case in September of 2016. You would have thought that would have spurred the government into action, wouldn't you? A mandamus petition saying, you have my entire appeal, it's been certified to you, seven months have gone by, and you haven't even so much as docketed it. I'm flabbergasted because I just am failing even to understand your answer. There must be something really complex involved in docketing. There's nothing complex. Because we are now, if I understand it, this is April 30th of 2018. So we're looking at two years and two months between when the appeal was certified and yet, despite a mandamus petition that was filed almost two years ago, it still hasn't been, quote, docketed. What am I missing? Can I just ask you a clarification? I couldn't agree with you more. Just so I'll understand where Judge Moore was a few minutes ago, like what is happening at each of these two steps. Am I correct that certification to the BVA, that box, that's kind of in control of the Veterans Administration, right? They're the ones, the actors in that. And let me just finish my question and then you can tell me. And my understanding is that docketed by the BVA is what the BVA then does with it. Does that comport with your understanding of what's going on in these two steps? That is correct with one minor point. And that minor point is that the BVA is the secretary also. The Board of Veterans' Appeals makes the final decision for the secretary. Yeah, yeah, but it's a different entity. Yes, it is. They have a different office on I Street. Let me ask you. I'm still trying to get a transparent what this docketing thing means. So does that mean literally typing into the electronic system, oh, we have this case now? Does it mean distributing it to particular judges who are going to decide it? What does it mean and why is it taking so long? It's already at the Board of Veterans' Appeals. It is already what you and I would call docketed at the Board of Veterans' Appeals. Is this the thing that, by the way, in the study from 2015, which appears at page 1408 of the Rose Appendix, is this the thing that takes 222 days? It says 537 days to certify. Then it says 222 days for receipt of the certified appeal. That's the docketing. That's the docketing? Yes, that's how you put it together. So on average it takes 537 days to fill out a form. It takes two hours to fill out. And then it takes 222 days to then docket it, which takes our clerk's office, what, Ms. Jeffrey, 30 minutes? 30 minutes? I can only agree with you but, Your Honor, it's already at the Board of Veterans' Appeals. The Board of Veterans' Appeals, and this is not in the record, but I happen to know they send it out to American Legion and to VFW and say, hey, do you want to put anything in this before it comes back? Well, then they must have a team of people that hand copies it with a pen and paper, page by page, because what else can you claim with 222 days to take? Your Honor, you have put your finger right on the point that we have made continually, which is that this two-year delay from the time, this is a two-step appeal process, okay? Two-step appeal. You get a rating decision that's bad, you get a statement of case that's still bad, and that takes about 500 days. Yeah, but time out. That's different. That's different because sometimes new evidence could be submitted, sometimes there's a need for a medical examination. Absolutely. I can't look at an average for development of a case and resolution of that case because, let me tell you, as appellate judges, we have some cases that take us no time at all to decide, and other cases, and we're not even building a record, we're accepting the record, other cases that can take quite a long time for us to fully resolve. So I am sympathetic to the idea that not every case is the same from its initiation to a statement of the case, and evidence is developed and a duty to assist. So you don't actually have me at all if you focus on that aspect of this case. I was only going to contrast it, Your Honor. That first part, on average, takes 500 days. The rest of it, which is a year and a quarter, the rest of it, according to the Secretary now, takes five and a half years. Two of those years are made up of trying to get this form, this two-page form. Let me move you along. I'm sure it will carry the government on this. But one of the general issues presented in this case is whether the two standards, the different standards, the track standard and the mis-standard. Yes, Your Honor. So I understand your position is that there's some significant distinction between the two standards. Do we have any examples with respect to these appellants or anyone else where the Board has really articulated where that aspect of the standard would trouble you? And you may have a good point to the extent it's different than track, and it arguably requires some intent and refusal, et cetera. But I couldn't find any cases where the Board really applied, or the CABC, I'm sorry, applied that factor. In fact, I mean, there's one case. I know it's an older one. It precedes the standards. But in that case, in that particular opinion, they applied the track standard. It's Palmer they did. Yes. So do you have an example? Are there any of these appellants? I know each of the CAB opinions, we've got one for each of these cases, and they're all sort of different. But is there any way that we can satisfy ourselves that in this particular circumstance, the CABC applied the wrong standard because it's the difference, that aspect which differentiates the track standard from the CASTANDA standard? Is what the CABC relied on in resolving the record? Yes, Your Honor. In five of our, six of our cases, I should have that number in front of me, but I don't. CASTANDA is actually cited, and CASTANDA says, because you have not shown that the secretary has refused to act, and as soon as you file a mandamus petition, the secretary, except in Martin's case, moves you forward a little bit, just to show that he's not refusing to act. And they say, that's the end of the story. I don't care if you want to argue that this violates due process, that all the cases that say that two, three, four years is too long. CASTANDA won't let you get there. They use it to block consideration of the due process argument because they say, well, that's mandamus, and that's our standard. What about track? Wouldn't it be the same? Let's assume the board, the CABC used the track standard. It would not be the same, and it would not be the same because CASTANDA takes in consideration only the interests of the secretary. When you get into track, two of the factors are, is this health and welfare type issue for your veteran? That's a good point for him or her. Is this, what is the nature of the claim? So, CASTANDA just says to the secretary, you must be busy. Doesn't pay any attention to what's going on with the veterans. I mean, that factor certainly inerts the benefit of the veteran in every single case, so why can't we assume that that's just a background factor that exists in all these cases, right? Because it's never suggested, it's never used, it's never used in any way except in the Spalmer, the 1990 case. If you're pointing this, I understand it. If the track factors were the ones used, it would be a factor considered, whereas under the CASTANDA factor, it's not a factor considered. That's right, Your Honor. If you put the Matthews factors on what is a violation of the due process clause and the track factors together, they're virtually identical. They're virtually identical. Track is six factors, Matthews is three, but with CASTANDA, they never get there because they say the secretary hadn't refused to act. Can I ask you another question, which is the four veterans who died during this whole process, so veterans' benefits are often medical-related, but other times they're disability payments, which are basically what the veteran needs to survive, to buy food, to put gas in the car. Yes. Is it correct, it's my understanding, that when a veteran dies, if his or her spouse has pre-deceased her, and if they have no minor children remaining, that even if they have a completely legitimate claim that tended for seven years before final resolution, they never get the relief, they get the medical. If there's out-of-pocket medical, they will never get the disability payment, which amounts to basically their living, their funds necessary for living. Is that correct? That is correct, and if they die without a spouse or minor children, it is gone. Now, not the medical. If somebody had to put out the medical, do they get the medical back? The disability claims here don't go to medical expenses, right? They go to compensation for the disability. They go to compensation. The VA medical system is different. They're on the VA medical system. That is a different issue if they're over-enrolled in the VA hospital system. Let me give you a poor example. Suppose that I had a veteran in my family who had a claim for disability, and they couldn't work, they were totally disabled, and for the seven years while their claim is pending, I'm paying no rent for them, because otherwise they'd be on the street, right? That's right. So I'm paying their rent for them, and it's taking seven years to process the claim, and in the end the government says, well, looks like you have a valid claim, we're probably going to award it, yada, yada, yada, and then that veteran dies, and I happen to be 26 years old, but I've been paying for my veteran in my family for the last seven years while he or she has been waiting to receive the benefits owed to them because they were injured in the service of our country. So that person, if I can't step in and say, well, wait a minute, during the last seven years I had to pay $27,000, I went into debt paying my grandma's rent or my granddad's rent or whatever, that money's just gone. You're out of luck. So if I take care of a disabled veteran who has a valid claim. And you're not that veteran's spouse, you're out of luck. Can I ask you another, not to push back, because I associate myself with Judge Moore's question, but just the other side of that coin, which just represents reality, is that this seems to be, and I hate this expression, but a zero-sum game. The VA has the same budget, and we, as a different branch of government, don't have anything to do with the resources that Congress decides the VA should have. So assuming that it were just a question of inadequate resources that led to all of this delay in the system, there's one point, which is there's a finite amount of resources. So even if we were to say you have to do this more quickly, maybe the money then has to come out of medical care for veterans. And the other point of this, which has been made in another of our opinions, is this is a zero-sum game because people file mandamus, and as you say, more often than not, except for Mr. Martin, the VA steps in and says, I'm going to get rid of this case, I'm going to take you. And all that means, I mean, that may be good for the people involved, but all that means that another veteran who hasn't sought mandamus is going to be pushed to the back of the line or further behind in the line. So what are we to do with all of that? Let me answer your second question first, if I might. Do you just counsel veterans to file mandamus in every case? You probably should. Shouldn't you be counseling veterans to file mandamus in every case? I would suggest to you the answer to that is yes, but the line that our veterans all got jumped in, except for Mr. Martin, is a line that should not exist under the Due Process Clause. This problem can be fixed. There is no statute, no statute, that causes this 756-day delay. The VA knows, and we're not in a position to know, but if it happens in this case, which is highly unusual for the kind of cases we see, they did act, Congress did act, and we've got a new statute. Now, I don't know the details of that, they're not part of our record, but one would hope and surmise that people recognize the problem that you see and we see and acted to resolve it. And I know that doesn't apply prospectively, but there is this RAMP program now that arguably allows it to affect and hopefully benefit veterans who have cases longstanding. Your Honor, it is in your record. It was filed, just in case you want to find it. But it doesn't do these veterans any good at all. This is a program in which, if they participated, the secretary says, well, we'll get you your first level decision in 125 days rather than 500 days. Great. That's wonderful. And then you've got a five-and-a-half-year delay to get to the Board of Veterans Appeals. It doesn't touch that in any way. And our folks would be nuts to say, oh, dismiss your appeal? Trust me? Trust me? So what should Congress have done? Say, okay, looking forward, you're not disputing that looking forward for new claims that are filed after the date, that the system may improve. Right. It may be good for that. So what should have been done? And everybody else whose claims were already pending, you're suggesting that Congress should have stepped in and said, okay, you have to devote all your resources to cleaning up your backlog. I mean, what are we supposed to do with that? The VA gets more money and more people any time it asks. What Congress should do, if I were in Congress, is let's hold a hearing and find out, as Judge Moore asked, why does this take this long? What this court should do, in my view, is that when this Veterans Judicial Act was passed in 1988, part of it was to see to it that there was not unreasonable delay by the Secretary. There's a reason that Congress put the Veterans Court and you here. It said that the Veterans Court is supposed to see that there is no unreasonable delay, and the Veterans Court has not done it. Okay, stop. You're just grandstanding now, so stop. Part of my problem with your case is you run me into a separation of powers issue. I don't understand the precise relief you seek. When we get a mandamus petition, it is because in an individual case like Mr. Martin's, there is a legitimate problem, and we need to correct what's going on in that individual case. But it feels, I just accused you of grandstanding, it feels like in your brief you're doing a little bit of the same thing. Do you operate under some sort of illusion that as a judiciary, we can order the Secretary to adopt regs and process things at a certain time, or that we can order Congress to give more money to the VA so they have more people processing things? A lot of what's in your brief goes to a broken system. I get it. The VA's own reports scream that, and they don't disagree with it. But what is it you think we can do other than order individual relief in the individual cases you have brought? Here's what we ask you to do. We ask you to order that a writ of mandamus issued requiring the Secretary to take the discreet, statutorily required step of issuing a final decision in the cases of our veterans who have waited too long. You can do that. You can do that. I'm saying in the cases of the veterans who have waited too long. You confine that, I assume, to just these veterans before us. That's right. Just these veterans before us. When you say veterans who have waited too long, that could be... Judge, my time's running out, and I was short-cutting it. I only mean these veterans. But if you hold that these delays violate the due process clause, it has an effect elsewhere. But that's not what we're here to ask for. That's what I wanted to... One of the things I wanted to ask you about was how exactly your due process... I have a little problem understanding exactly how the due process argument factors into the case. I understand you're challenging... You say that the CAVC used the wrong standard, the Costanza standard, in assessing the mandamus petitions should be tracked. It seems to me that if you lose on that, you're out of luck. If you win on that, that's the end of it. How does the due process factor in? Thank you. We have two totally separate rights, totally separate. One is a right under the Ritz Act to argue about Costanza versus track. An absolutely independent right is to say that procedural due process, which you found attaches when somebody applies for disability benefits, procedural due process prevents the government from taking seven years to make a decision. We are being deprived of our due process. Well, it seems to me... In your amended complaint, your prayer for relief, the only reference... makes two references to due process. One of them is that this court holds unconstitutional under the due process clause any statute, regulation, or practice that interferes with prompt and speedy appeals. We're not asking for that at this point. We thought that perhaps the secretary would come to us and say, you know, this regulation is in the way. What would you think about challenging that and ask the court to throw it out? But what we're asking for now is for you to enter an order of mandamus requiring the secretary to solve the constitutional problem, to issue a final decision. Under Norton, that's what you can do. That's what's required. He has a statutory requirement. Did I save 30 seconds? No. Don't worry about your time. We'll refer you to somebody. Can I ask you a quick thing? Don't you have any apprehension at all that there's an easy answer to your relief? I mean, even putting in a one-year time frame or whatever. The VA can just, or the CABC or the BVA, they can just say no and reject the claim. So you understand it's a double-edged sword, and if they think the only way they can comply, given their caseload and given their resources, is okay, we'll just have to give short shrift to the merits of these cases. We can't allow more medical opinions. We're not going to give them the chance to respond to new documents. We're not going to look for all of the historical records, which is sometimes difficult to do with respect to a veteran's service. Isn't that a problem? Your Honor, we're well aware of that issue. We are all way past the time of the secretary helping us. That was in the first 500 days or so. We are now at the Board of Veterans' Appeals. Yes, yes, we've talked to our veterans. They may just say, the judge said 60 days. Here it is in five days. You lose. If they do, we will appeal to the Court of Appeals for Veterans' Claims, and I believe we'll get a fair hearing. Let me ask you, would you want us to, assuming the Court would agree with your argument with respect to the Costanza slash B2B, the track standard, would you want us to send this case back to the Veterans' Court and say, consider it under the track standard? Consider the mandamus petitions not under the Costanza standard, but under the track standard? The answer to that has to be yes, but. There is a due process deprivation that's going along with it, whether you decide it or not. And if it goes back like that, I would ask the Court to hold. It also violates the due process clause. Now go back and figure out. What violates the due process clause? The delay. The delay. The delay. We've got a dozen cases that say two-year delays. There's a Second Circuit case where a landlord had to wait two years to get money back from the city for participating in a program. Okay. It violates due process. And what about the cases you acknowledge that some of them are mooted? The cases that are mooted are moot. We have nine, ten live veterans' cases. Even for those veterans that have already received the relief, the problem that you identified in the relief that you saw in the first instance? These ten have not received a final decision from the Board of Veterans' Appeals, which is what we seek. Not if it's docketed before the Board of Veterans' Appeals. It's docketed, but that's two years away from a decision. Well, what you saw in your relief is, as I mentioned before, you have one reference to due process, and that's one thing to walk back. The second is that this court issued a writ of mandamus directing the Secretary to prepare necessary appellate documents in a fashion that does not deprive the veteran of their due process rights. I don't understand what necessary appellate documents. Was that the statement of the case? We should have been more specific, and that's my fault that we weren't. That is a final decision by the Board of Veterans' Appeals saying you win or you lose. And this has never been a question raised by the CAVC with this case. All right. Well, we'll restore some time for rebuttal, a few minutes, before I leave it to the government. Thank you very much, Your Honor. Good morning, and may it please the Court. The appellants are asking the Court to use its mandamus power to essentially inject itself into questions that are reserved for the political branches. The appellants are, through a writ of mandamus, inviting the Court to really get into questions that not only are properly reserved to Congress and the VA. Wait a minute. We've got the track standard. That applies all over the place under numerous statutes where unreasonable delay is the standard, and it has to be a level of egregiousness in terms of the writ of mandamus. But that's what courts do all the time, right? Absolutely, Your Honor. Courts entertain writs of mandamus. And in this particular context, just to emphasize at the outset, the Court's standard of review is an abuse of discretion standard. So you're looking at whether or not the Veterans' Court, in this particular instance, abused its discretion in denying the petitions for mandamus. But if the Veterans' Court used the wrong legal standard for evaluating a petition, wouldn't that be an abuse of discretion? Yes, Your Honor. It would. In our view, the Court properly applied the right standard, the constantive standard. In your view of the constantive standard, I mean there's that one phrase, right, arbitrary refusal. Do you construe refusal to be an affirmative refusal? I couldn't understand from your brief, frankly. You seem to be defending the standard but then kind of reinterpreting it and suggesting that maybe it's not really all that different in track. So why don't you tell us what your view is. Sure, Your Honor. The full language in Costanza, which became the basis for subsequent non-published decisions used by the Veterans' Court, and on Bonk, in particular, in the Nebo Doe, the Veterans' Court also applied the same sort of standard. But what it's asking about is not just whether or not there was an arbitrary refusal to act. It's asking whether or not there is a delay that is so extraordinary, taking into account the burdens on the Secretary, that it amounts to an arbitrary refusal to act. And I think the point that we tried to make in our brief is that on its face, that standard does not require any affirmative refusal to act in a given case. What it does take into account – Well, it's really hard, you know, to take a statement where the words are arbitrary refusal to act and to hear you say, does it mean a refusal to act? Isn't that what you just said? Well, Your Honor, I think what I was focusing on is the concept of amounting to an arbitrary refusal to act. Because what the case law recognizes, and I think that, as we said in our brief, the Costanza standard is really consistent with a long line of case law, going back to – Well, how, in your view, is it different from the track standard? Well, in many ways, it's very similar to the track standard. Okay, so how is it different? It's different in the sense that the track standard sets up this sort of six-multifactor pattern. Right, none of which are compelling, and which the D.C. Circuit recognized. The preface to that is this isn't a rigid rule and there might be other factors, yada, yada. So what's wrong with that? What's the difference between that? Well, I think it's not so much as what's wrong with track as there isn't anything wrong. In fact, there's a lot right with what the Costanza standard does. So what's the difference? Well, I think the Costanza standard, the Veterans Court has adopted that formulation in the context of the VA. The track standard was adopted by the D.C. Circuit to apply it. You're still not answering my question about what the difference is between the two standards. Well, the track standard takes a multiple sort of multifactor test. Some of those aspects in the track formulation do not appear in Costanza. But ultimately, they're both going to the same question in a delay context and asking whether a delay is so extraordinary in the context of a writ of mandamus that it meets that high burden on a mandamus decision. Is there a difference then? I'm still trying to see what the difference is. Yes, you're right. They have the standard of viewing this in the context of a factor being whether or not the health or the welfare of an individual is at stake. Are you telling me that the CABC couldn't or doesn't sort of consider that as the backdrop? Would that be problematic if it did? I think the case law shows that under the Costanza standard, the court is not, contrary to what was said earlier, under Costanza, the Veterans Court is taking into account the circumstances facing the individual veteran. It's not just considering. Okay, so that factor is okay. What other factors in track do you think, is there a difference between that? I have a two-part question. One, what is the difference? And if there's a difference, what's the problem is with the track standard? Your Honor, my answer to that is, you know, the track standard cites a number of things that are clearly not expressly reflected in the Costanza standard. For example, the delays, whether a delay might be reasonable for economic regulation or it could be less tolerable for situations where Well, that's the health and welfare thing, which you already, I thought you just told me two minutes ago, that of course they consider it in a complex way. Well, I think they do, but I think if your question is, what is the difference between the two standards, all I can really point to is the fact that you've got a very long and complex, what the D.C. Circuit has acknowledged as a vague standard, and the track standard that is different on its face from the Costanza standard. The Costanza standard does use this arbitrary refusal-to-act language. I think our position is simply that that's worse. Well, what's the difference on its face? I feel like you're evading, and maybe it's because you don't have a good answer, but you're evading the Chief Judge's question, which is, what are the precise differences? Let me help you. Number five under track is the court should also take into account the nature and extent of the interest prejudiced by the delay. Is there anything you believe in the arbitrary refusal-to-act language that would take into account, as you understand it, how the veterans' interests are being prejudiced? Like these veterans who died, for example, right, during this process. They can't get their benefits. Their sons and daughters can't get their benefits if they're over the age of 18. So is there anything inherent in the Costanza standard? Because I've read all six just now as I sat here that cite Costanza, and all they say is nothing that rises to the level of arbitrary refusal-to-act. Do you see in any of these Costanza cases any analysis that takes these kinds of factors into account? I think, Your Honor, in the language that says in Costanza about whether a delay is so extraordinary, taking into account the burdens on the Secretary such that it amounts to an arbitrary refusal-to-act, that extraordinary concept is really inherent in a mandamus petition. You have to demonstrate a clear and indisputable right to relief, and you have to show that there are no adequate alternative means of obtaining relief. That extraordinary concept is embedded in the standard. It allows the court to consider multiple other factors. And then just out of curiosity, do you think when the D.C. Circuit came up with TRAC and when 263 district court and regional circuit opinions throughout the country have followed it and used these six factors, it was just entirely superfluous because it really reflects nothing more than the mandamus standard? It seems odd that all of those courts would think they should go through these six factors, because it's not 600 cases like the Bloomberg claims. It's 263, because I went through, actually, my law clerk up there went through all of them. So it's 263 cases in many different district court and regional circuits that went through those six factors in addition to laying out the mandamus standard. So they seem to disagree with you. It is inherently captured within the mandamus, or maybe they're just into redundancy. Well, they're dealing with different contexts. I don't think that those district courts are really evaluating the differences between the standards. And the five regional circuits. Let's not forget them. Let's not forget them. I agree, Your Honor. And we're not taking issue with the fact that the TRAC standard has been applied in multiple different contexts by the courts and has been found to be an appropriate balancing question. So the question is, veterans, usually the Supreme Court has said, and I'll be honest, I've never understood this sum-on-the-scale thing. I don't even know what that means. I'm a plain language kind of gal. I don't get what sum-on-the-scale means. I know you know what I'm referring to, right? But the Supreme Court said, you know, we're always to be more favorable in interpretation to veterans, not less. We have two different standards. We have the Cassandra standard, articulated by the Court of Veterans Claims in exactly one and a half pages of no analysis. It comes up with this arbitrary refusal-to-act language, which is then repeatedly applied. We have a D.C. Circuit opinion that articulates six factors, several of which seem like they'd be more favorable to veterans under these mandamus circumstances. Do you think there's anything to that Supreme Court language that says sum-on-the-scale for veterans when you're choosing to interpret regulations, you should choose the interpretation that's more favorable to the veterans? Could that maybe be the kind of thing that tells us in this case, for goodness sakes, you probably ought to apply the same standards that five regional circuits and 94 district courts have applied, and not the one you chose instead of one and a half pages of no analysis, which is more difficult to prove? Well, Your Honor, in terms of being more difficult to prove, I think that what this court has, in a number of non-published decisions, has affirmed the Veterans Court's application of the Cassandra formulation. And so, with respect to that, I think that... Do you foresee that if we were to adopt or require that the CAVC apply the TRAC standard, is that a difference of the distinction? Do you think the result would be different? Do you think this arbitrary refusal to act is a more stringent standard than the one you come up with if you apply TRAC? No, Your Honor, in this particular case, I don't think it would make a difference in the outcome, precisely because the TRAC standard, number one, takes into account this notion of a rule of reason, and the second prong in the TRAC analysis is taking into account what... It would take into account whether Congress and the political branches have done anything to act. Those factors, I think, weigh heavily against the issuance of mandamus in this case. If you were to do a TRAC analysis, there's really been no showing that you would come up with a different outcome. So can you come up with any kind of hypothetical where there would be a different result based on the distinction? I still can't get over not understanding what the government's position is to what the distinction is. Obviously, TRAC has a lot more words and brings in other kinds of policy concepts, but at bottom, I'm trying to see if the government thinks that there's any circumstance in which applying two different standards would lead to a different result. Your Honor, I'm not sure that I can come up with a situation that would lead to a different result offhand, but our position is really that you have settled case law with which the Costanza formulation is consistent. You have the fact that it's been repeatedly applied for almost 19 years by the Veterans Court, and it's worked. Well, am I wrong here? Because we've got a lot of individual cases, and the CAVC, as I said earlier, issued a different opinion with respect to each of these. It didn't cite Costanza in very many of those. It didn't articulate or analyze that standard except for citing it in the other one. So I don't know where that... that hasn't been particularly illuminating for me at least. Well, Your Honor, that raises an important point, which is, again, on a writ of mandamus, I think the Veterans Court has reached the question that was presented before it, which is, on a mandamus petition, under the Cheney standard, as reflected in the Supreme Court's decision in Kerr, you need to prove really three things. A clear and indisputable right to relief, a lack of adequate alternative means of obtaining it, and the District Court, or the Veterans Court in this case, has to be convinced that a mandamus petition should issue. And that last one is significant too, because you were looking at this on abusive discretion standard and asking whether or not the Veterans Court abuses discretion. Under that three-pronged formula, we think... Let me just... because I want to segue into the mootness question, because there are a lot of mootness questions that are near to the details here. But frankly, let's look at Mr. Martin. Sure. Because he's the only one, at least, as Judge Moore pointed out earlier, where subsequent to the filing of the mandamus petition in each of these individual cases, I think his case is the only one in which there's been no action. Now, we don't know whether the action was taken as a result of mandamus or not, but his... it hasn't. There's been no action. Am I right? I wouldn't necessarily agree there's been no action, but let me try to frame... Well, we asked you to supplement us and let us know any action that's taken place, and you reported no action. So what am I missing? Well, I think our supplement characterized the status as it stands. And I would just say, in terms of... Yeah, but you're really walking into it, because there's been no action, and we'll get into it, I'm sure, between what Judge Moore talked about earlier, certification and then the docketing. That's what we're on now. We're not on the statement of the case. We're not on something substantive, right? So the docketing is... To get back to some of the colloquy earlier about what is the docketing, my understanding is the docketing is when the board is essentially receiving the cases ready to hear it. It's different from simply sort of listing it on an electronic database or what have you, but it's actually when the board is ready to hear it. The number of days that it's taken between the certification stage and the docketing stage has been, to date, extremely long, and that is a big problem. 222 days. That is the statistic that was in the record. In the 2015 report. Correct, Your Honor. I think that's the statistic that the appellants have focused on. Because I don't understand what you mean when you say when they're ready to hear it, that's when they docket it. So that date that we see in docketed is the date of the hearing? No, not the hearing, Your Honor. I think it's the distribution of the case to the board for decision. Okay, well, this is really odd because in Sarah Aptepi, the time from the certification was from February 2017 to June. So that took four months. We've got another case where it was the same day. Mr. Myers. Mr. Myers is deceased, but it was the same day. It's only six months for Mr. Messinger. But you're clear, right, that that's what it is. It's when they're ready to hear it. So how come other people get their cases ready to hear in a matter of months? And Mr. Martin, it's now well over two years and it hasn't been docketed by the board. I don't know why it took Mr. Martin's situation longer. I do know that it would have taken longer. Well, yeah, and we have no idea because it hasn't happened yet. We don't know when it's going to happen. Well, that's right. We don't know. But with respect to Mr. Martin, Mr. Martin, I believe, is requesting a hearing before the board and in some cases, at least, and I don't know the specifics with respect to his case, there can be situations where after the so-called Form 9 substantive appeal is filed and the certification stage, there can be new evidence submitted. And Mr. Martin has also requested a hearing, which can result in sort of a difference with other veterans if you're requesting a hearing. Your Honor, I hope you're telling veterans that if you request a hearing, you're going to sit on this for another two years. I mean, so they have two tracks. If you request a hearing, you get into one bucket, and if you don't, you're in another bucket. Well, Your Honor, I'm actually not sure what veterans are notified. They do are given, if they're requested a hearing, they are given information with respect to that. I do want to be careful here in terms of in describing the state of play in the appellate system. There's a big difference between where we are today or where we are historically in the record of this case versus under the new Modernization Act. If the new Modernization Act doesn't apply to Mr. Martin, and just like you'd like me to take into account which cases are mooted by subsequent action that has actually occurred in them post the petition, I can't imagine what might happen to someone other than Mr. Martin in the future. I am limited, much to his chagrin, to decide whether in an individual case it individually warrants a petition for mandatement. I view my job as quite narrow, which you should very much appreciate in this case. So don't tell me what might benefit some future veteran post-February 2019. Mr. Martin has filed his certification, or the certification was filed in February of 2016. He filed a petition of mandatement seven months later. Why wasn't it granted at that point in time? I think it's an abuse of discretion for it not to have been granted under any standards you could make up, which is pretty much what I think the CASANZA is, a made-up standard. But in any event, let's just focus on it. Why shouldn't I say it's an abuse of discretion, either because the CASANZA standard was wrong, as a matter of law, or because just under the facts of this case, you've said nothing that convinces me that it warrants two years to move from a certification to a docketing, which is not even a resolution. It's just passing the case on to the judges who are going to hear it. It's not like there's briefing in between that leads up to it. No more evidence is being taken in Mr. Martin's case. Why isn't that warranting mandamus? Forget about every other case. This one, why doesn't it warrant mandamus? Well, first of all, a couple of responses, Your Honor. One is that this new Modernization Act is not going to affect until February of 2019. However, the VA, as reflected in our supplemental appendix, is in the process of issuing invitations to veterans who have these so-called legacy appeals, and that includes people like Mr. Martin, who would have the ability to opt in to these new procedures. I know, and you know what? I spent some time reading it. I have it kept right here, his rant letter, right here. Do you know what would be of no benefit to him? Because the rant process expedites the portion of the appeal that has already occurred for him. Isn't that interesting? It would expedite his time to get a statement of the case. Guess what? He's got one of those. That has nothing to do with the petition he's asking for. He's asking for a BVA decision. The rant letter you offered him gives him nothing that would expedite his BVA decision from the period of time when it has been certified to the period of time when there will be a decision. So I'm not sure how that really helps him and how it answers the question of why he doesn't deserve mandates. Am I missing something? Well, Your Honor, my understanding is that Mr. Martin, who was given one of these invitations, would have the opportunity to invoke these procedures and that they would help him. How would they help him? Well, if he wanted to receive a faster decision on his claim... On his appeal? On his appeal. An appeal to the CABC or to the BVA? On to the BVA. There's no CBAC appeal with respect to that. All right. What does the new statute do with respect to that? Well, the rant program is basically a pilot program, and what it does is the VA is extending this out to some 350,000 veterans, prioritizing the ones who have been waiting the longest. And the idea is that they have the ability, if they want to take advantage of that program now, to basically invoke the faster review processes. So he could, with respect... Instead of waiting for a board decision, he could then go back for a higher-level review before the regional office, or if he wanted something like that. Let me make sure I'm not misunderstanding something. This is the letter you sent to him, and it says, Compensation-related appeals certified to the board through formal placement on the board's docket are excluded and will remain pending in the current appeals process. That seems like where he is. This has been certified. Your Honor... So it seems like it benefits you. One of the things I think Grant meant to take care of is this ridiculous 537-day delay. But he already has been through that. And it says in the letter you sent him that this case is not really eligible for any kind of fast tracking because it's up to and through the certification period. Your Honor, I'm not sure about the language in the letter, but I do... That's the letter that went to him. I understand that. But my understanding of the RAMP program in terms of who is eligible are that the people whose cases before the boards have been so-called activated, meaning that the board is actively looking at it, those people are not going to be able to participate in a RAMP to avoid the duplication. So I'm not sure if that applied to Mr. Martin, now that you read that to me, or not. I do want to make a couple of other observations, though, because our focus, our argument, is not simply that RAMP renders all of these appeals moot, but these are important policy questions that Congress has recently been grappling with. There is a real separation of powers concern in the way that this proposal is framed. What does that have to do with Mr. Martin? Well, Your Honor, I think it does. Not only... I mean, the Council has sort of reformulated the request for relief. I shouldn't consider relief for someone who is subject to an unreasonable delay because Congress is considering fixing the problem as may be applied to other individuals. Well, Your Honor, the... The mandamus is narrow, sir. I'm not looking to change policy for the Secretary or rewrite the laws, no matter how much people would like me to do that based on the briefing in this case. I'm looking to figure out whether these individual veterans have suffered unreasonable delays, and if so, what ought to be done about it. I just don't see how Congress taking future action matters at all to Mr. Martin. If you were here, do you think it would matter to him, Mr. Martin? Are you out there? Does it matter to you? Your Honor, I think that the point... Maybe it matters to him because he's glad that future veterans won't have to suffer the way he has, but... Your Honor, I think my point with respect to the Modernization Act is that Congress in setting up this system really made a trade-off between timeliness of these appeals on the one hand and other objectives. A lot of the problem with the delays historically has been a lot of procedure, a lot of process, much of which is for the benefit of the veteran. You know, the duty to assist by statute. Okay, we are... Let me move back just a moment. Go ahead. Just shut off. I wanted to get back to this question about the certification, and you were discussing that in response to questions from both the Chief Judge and Judge Moore. As I understand it from what you're saying, and please correct me if I'm wrong, it gets certified to the board, okay? Then it's sitting there before the board. But the board does not officially docket it until it decides it has space for it in line with all of the other cases it already has. Is that what you're saying? That is what I'm suggesting, Your Honor. I'm not sure exactly what transpires between the certification and that sort of decision that is ready to be docketed. What I can tell you is that the board, the status of a hearing, if a hearing is going to be requested, is taken into account in that process. That can sometimes... I mean, like, for example, Judge Moore was saying earlier, she was pointing out, which is correct, obviously, that the appeal gets filed here. It's docketed either that day or the next day, and then it gets on a track. A scheduling order is issued. But what I hear you saying and what I got the sense of from some of the affidavits that were mentioned or declarations that were mentioned in the record, that what happens is appeal goes, certification gets filed with the board, but the board doesn't take what we would think of as a common docketing action until it determines that it's in a position where it can start adjudicating the case in some way. Is that...? I think that's right, Your Honor. I think that's correct. So there's kind of this stop period. Even though it's at the board, the board doesn't do anything until it feels it can do something. Yes, Your Honor. Well, a couple of points. One is... Is that right? I think that's consistent with my understanding, Your Honor. But I think the way this appeal is really framed, we are not focusing on just the docketing versus the statement of the case versus the certification. And again, getting back to the request for relief and how problematic it is, it's asking the court to eliminate delays. The way the issue appears to sit now, given the supplemental certifications we've got, is that the whole issue is this certification docketing board action phase. Well... Where could one find exactly how the board operates in this? Are there... Would there be specific board rules? With respect to the docketing versus the certification statement? With respect to this, we have the certification, now we docket. Your Honor, I suspect, and I'd be glad to provide a supplemental brief if the court is interested, in terms of... I believe that there are regulations that clarify what that process is. I do... In the board statistics, there are a number of important pieces of information that we think are in there that we just filed in the supplemental appendix related to the board's processes that do, I do believe, touch on this process of the docketing. But that really is... In terms of what your characterization of sort of where the case stands is now, I would beg to differ with an aspect of that in that what the Veterans Court was considering was whether, on the record before it at the time, now that was late 2016, is whether mandamus would issue. The fact that it was appropriate, the fact that a number of these things have occurred since then, in our view, really reinforces the fact that there has not been an unreasonable delay and that getting back to the standard, clear and indisputable right... Okay, well, let's assume hypothetically that we were to conclude that to the extent there's daylight between Kastanis and track, we think there is and we think the correct standard ought to have been track. We're left with Mr. Martin, whose case has not been mooted out by subsequent action, and I presume the government's argument, and then there's some special circumstance for Ms. Cyprus. But aside from that, is it the government's position that even if we were to conclude that the wrong standard was applied, the cases have been mooted out by subsequent action and therefore they're all done? No, Your Honor, not as a whole. So the cases that, in the Secretary's view, are moot are Ms. Skyvers. Her appeal is moot because she got a favorable decision. Right. And notwithstanding the fact that she's challenging the effectiveness data, our position is that that doesn't fall under the exception. It's a new claim. I believe counsel suggested that there had been four veterans who died. My understanding is I think there were two. It's Myers, and in the other case, it's Myers, and then I believe Mr. Miller had deceased during the pendency of the claim. But Ms. Aktebi is another claimant. She had a board decision that was issued just a few days ago on April 17, 2018, and our view that renders that claim moot as well. The fact that there have been these subsequent steps, the certification steps, and our position is not that that renders them moot. It just demonstrates, it reaffirms that the court below got the right result. So you're saying that in terms of the people listed on the Martin supplemental submission, you're saying that Aktebi, Myers, and Stifers are moot? That's correct, Your Honor. And how about on the Rose? It looked like in Rose, everybody might be out. So, Your Honor, with respect to Rose, it is Mr. Daniels is the one who has now been given a decision, which is essentially the relief requested. If they're alleging a delay in the board decision. Well, let me ask you about that. I'm just really confused now because I thought it was the government's position that where people like Mr. Gene, Mr. Matthews, these were the appellants that were seeking a statement of the case. And subsequent to the filing of the mandamus, a statement of the case was issued. If I'm correct about that, then the government is not arguing that those appeals were therefore moot? Well, Your Honor, I'm not sure that with respect to Mr. Gene, I think all of these appellants are not necessarily focused on just the issuance of the statement of the case. As I understand their argument, and it is for... So these cases are not moot, and therefore, if we change the standards, why would we not, with the exception of the two or three that you've discussed with Judge Shaw, why don't we have to send the patent and send them all, those back? Your Honor, because I think, again, the question before this court is on abusive discretion. You're looking at whether or not a written mandamus was properly denied. And on that basis, whether or not you apply this track standard or the standard, you're ultimately asking whether or not there was a clear and indisputable right to relief and whether there are adequate alternative to the standard. Well, we don't know. The answer is we're not reversing. I mean, I didn't suggest that we were going to reverse the results, but you're right. Just because there's such a deferential standard, how is it possible for us to know how the board, how the CABC, would have applied a different test? Well, Your Honor, you're right. We don't know how the court would have applied what I'm suggesting. And the only thing we're supposed to do under the mandamus is defer to what the CABC thinks. So I guess I'm not suggesting that we should not be remanding if indeed we do change the standard. Well, if the court were to find that the standard was incorrect below, that would be one option would be to remand. But again, in terms of that result would assume that the court, obviously, the assumption you're making is that the court would find that the wrong standard was applied. But in this situation, again, I don't think that the standard was the incorrect one. That would really be upsetting. Your Honor, just to return to my housekeeping question, who on the Rose supplemental submission, the folks listed there, does the government say is now moved? Your Honor, I believe in the Rose case, the answer     the, with respect to Mr. Rose, there were actually two people who were in favor of Mr. Daniels and Mr. Rose in favor of Mr. Daniels. And they were  the two appeals. And the board had docketed one on May 25th, 2017. The second had been certified. So I think it's just Mr. Daniels with respect to the Rose case that, and then Mr. Miller unfortunately passed away. But the other people. So just, you're saying just Daniels and Miller. Correct. Why wouldn't it be Rose? Well, because Rose doesn't have a decision yet. You understood. You're saying Rose is still good. Oh, Rose is still good. Rose is still still in play. Rose is still in play. You got it. I misunderstood. Can I ask you another question just to indulge Mr. Miller over time? This is, I am having trouble deciphering the mandamus portion with the question about the hands that are trapped on the shelf from the due process stuff. I don't really know how due process is at play here. Like, for example, if we were to find that the lower court applied a moment earlier than the vacating amendment for them to apply track for the ones that are still out there, what do I do with this alternative due process claim? I don't understand how it's an alternative. I'm kind of confused about how these two are being argued as though they're separate and distinct. Well, Your Honor, I'm not sure that they entirely are separate and distinct. It is a separate question to argue a due process violation as it is to argue a reasonable delay. If we were to vacate and remand, does that result in the due process violation as opposed to... Well, Your Honor, I am struggling myself to understand exactly what relief is being sought by the appellants here because I think it's framed in their original petition they're asking to eliminate delays, strike down regulations, etc. Let's assume that I don't think that they've met a burden of showing a clear and indisputable right and a due process violation. Whether you apply a Matthews sort of balancing formulation or something else, the fact that there has been activity on these appeals, and this court held in land that the judge  he would  a substitute for the normal procedures, and as long as that's the case,  not be appropriate if you view it as a process for the court to issue mandamus ... You're not delineating the two things for me, and that's what I was hoping to have you do, because I'm not sure what to do with due process as separate and distinct from a petition for mandamus for unreasonable delay. I'm just not... Well, your honor, I think you don't need to necessarily start with a due process type of Matthews balancing analysis. That's the formulation that the appellants have advocated. Our view is that's not necessary. If you look at this court's decisions in Buchholz and Johnson, denied due process based delay claims of the type similar here, through a typical mandamus type of analysis, they haven't gone through any sort of Matthews based type analysis. In our view, that sort of analytical chain makes a lot of sense. Can I just follow up? I'm sorry to belabor this, but you mentioned one thing. You said you weren't arguing for mootness. You were submitting that action had been taken in these cases for what purpose, then, to show us what? Well, Your Honor, to the extent that the appellants that we've identified whose claims are moot, that the relief that they've sought has been obtained, it would be appropriate to dismiss those on the basis of mootness. That's the relief. Yeah, but no, no, no. But then you said those that haven't reached final decision, you said you're not arguing that they are moot, but you submitted that there had been action taken, and I guess I'm not clear, and therefore... And therefore, on the basis of the court's abuse of discretion review, the fact that there has been action taken in those appeals reinforces the   process and track slash Costanza. Except for the laws that govern the CAVC, we go into district court, we file suit under Cheney and say this delay violates our due process. You can't wait seven years for an agency to make a decision. Mandamus would be the way they would fix it, but Cheney looks at what the remedy is, what is your right. We say it's a new process. When we get over here in the CAVC, because the remedy is Mandamus, they say you don't have the right to consider injunctions and that sort of thing. We have two separate rights, two separate claims. One is not to be deprived of unreasonable delay, agency delay, and the other is the due process clause. These men and women have a constitutional right not to be deprived of due process by this taking an extraordinary number of years. Those are the two different points there. I think  about Costanza. Costanza was expressly cited in Daniels, Gene, Meskire, Miller, Mote, Rose, Cyphers, and the rule of it. They gave short trip. We don't know in any of those opinions, or at least most of them, what the nature of the analysis or the application was. It occurs to me that if track and Costanza are the same, why in the world is the government fighting so hard for Costanza? Think about the analysis of a track case being applied to Mr. Miller. Mr. Miller was 80 years old. He was a World War II veteran when he petitioned for mandamus to get a final decision. Wouldn't you take into consideration him and his age? And the court didn't. The court just said. I don't want to interrupt because you've got short time, but I did want to ask you, I apologize for jumping in on you there. It's okay, but I just want to ask you one question. You're saying we should, the track standard should be used, correct? Yes. Do you think that this court is free if it agrees with you? We can do one of three things, it seems to me. We can say Costanza is correct. We can say no, you could use track, or no, we could say to the veterans court, you should use track factors X and Y, but not all the rest. In other words, in your view, are we free to say to the veterans court, if we go that route, that it's not just all of track, but here's what we think track fits in the setting of the veterans court adjudication process, or the VA process? Absolutely. Though the other, the geographical circuits have pretty much embraced track, you could say no, this is a little bit different animal. So you're saying we could tailor, in your view, if we agreed with you, to your position, we could tailor track to the circumstances of the VA process? As long as it takes into consideration what's going on with the veteran, and not just what's going on with the VA. Yes, Your Honor, my time is up. There was a question about due process violating the separation of powers. Due process is considered by the court. That is a court thing. You can say that this violates due process, and the circumstances may cause problems in the government, but your job is to consider whether due process  violated. Thank you very much for the extra time. I appreciate it,